In the Matter of the Compensation of
James A. Poelwijk, Claimant.

CONSOLIDATED FREIGHTWAYS et al,
*Petitioners,*

*v.*

POELWIJK,
*Respondent.*

(84-00300; CA A37467 [control] 84-0340M; CA A37614)
(Cases consolidated)

726 P2d 379

Allan M. Muir, Portland, argued the cause for petitioners. With him on the brief were Ridgway K. Foley, Jr., P.C., Roger A. Luedtke and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Richard E. Fowlks, Portland, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Employer seeks review of a Workers' Compensation Board order which affirmed a referee's order setting aside employer's denial of a claim for medical services relating to claimant's compensable low back injury. In addition, employer seeks review of the Board's "own motion" order reopening the low back claim. The issues are whether the claim for medical services (surgery in 1982 and 1984) is barred by *res judicata,* and whether the Board erred in reopening the low back claim on its own motion. We affirm.

In 1973, claimant sustained a compensable low back injury. In 1974, Dr. Fagan performed a spinal fusion. In 1978, claimant was awarded 35 percent unscheduled permanent partial disability. He was apparently free from back problems until April 1980, when he fell in a hole in a parking lot at his apartment. Because Fagan had died sometime before 1980, claimant saw Dr. Gritzka, who remains the treating physician.

Soon after his fall, claimant filed an aggravation claim. In July, 1980, employer denied the claim on the ground that the back complaints were the result of the noncompensable fall. Claimant requested a hearing. Employer responded that claimant's compensable condition was not aggravated, that the present back condition was due to the fall and that, in any event, the five-year aggravation period had expired. ORS 656.273(4). In September, 1980, claimant had a refusion. In October, 1980, the Board rejected his request that it exercise its own motion jurisdiction. In January, 1981, the aggravation claim was denied, because claimant's aggravation rights had expired. His claim for medical services remained pending before the hearings division. In July, 1981, a laminectomy was performed with an extension of the fusion.

Claimant withdrew his opposition to employer's motion to dismiss the claim for medical services, because the medical evidence on causation was equivocal.[1] On August 11, 1981, claimant's request for a hearing was dismissed, and employer's denial of July, 1980, became final as a matter of law.

---

[1] X-rays taken in May, 1980, revealed a lucent line through the 1974 fusion. Gritzka was unable to determine whether that defect was due to a nonunion of the 1974 fusion or to an acute fracture caused by the fall.

Claimant's back problems persisted, and in February, 1982, he had another laminectomy and a refusion. He requested the Board to reopen the claim on its own motion. On December 2, 1983, employer objected to the Board's exercising its own motion jurisdiction and again denied responsibility for medical services. Claimant requested several forms of relief, including the medical services which are the subject of this appeal. In February, 1984, a fifth back surgery was performed.

After the 1981 surgery but before the 1984 surgery, claimant had sought Fagan's medical records in order to pursue vocational rehabilitation. The records included x-rays taken in 1977. On the basis of the x-rays, Gritzka determined that, after the 1974 surgery, claimant had developed an asymptomatic nonunion of the fusion. Fagan's records reflect that in March, 1976, he thought that the fusion appeared solid but that in November, 1976, he suspected a pseudarthrosis. A January, 1978, chart note also indicates the possibility of a pseudarthrosis.

Gritzka testified that claimant's back was weakened because of the nonunion and that the fall caused it to be disrupted. He indicated that, because of the pseudarthrosis, claimant was at risk of reinjury. Although Gritzka acknowledged that some independent event could have occurred between March and November, 1976, to cause a nonunion, there was no evidence that that had occurred. He explained that all of the surgeries were medically related and that the need for each new surgery flowed from the last. Factors relevant to claimant's need for the surgeries include the failure of the first fusion to unite, stress placed on other structures after surgery and perhaps a genetic predisposition to have problems with fusions. Gritzka's testimony was uncontradicted.

The referee held that, although the August, 1981, dismissal order precludes relitigation of the compensability of the 1980 and 1981 surgeries, claimant is not barred from claiming that the 1982 and 1984 surgeries were related to his original 1973 injury. The referee concluded that "claimant has shown that his low back condition is related to the original injury and he is entitled to medical services commencing with the February 1982 surgery." The Board affirmed and issued its own motion order, holding that claimant had proven that his

need for medical services in 1982 and 1984 was causally related to the 1973 injury and reopening the claim as of February, 1982.

We agree with the Board that claimant proved that the 1973 injury materially contributed to his need for surgery in 1982 and 1984. Indeed, employer does not argue to the contrary. Its argument is that *res judicata* bars the medical services claim, because claimant cannot prove that the 1973 injury materially contributed to his need for the 1982 and 1984 surgeries without "going behind" the 1981 order and proving that the 1980 and 1981 surgeries were compensable.

■     *Res judicata* bars claims which were or could have been litigated in the prior proceeding. *See Million v. SAIF*, 45 Or App 1097, 1102, 610 P2d 285, *rev den* 289 Or 337 (1980). It does not apply here, because claimant could not have litigated a claim for surgeries that had not yet occurred at the time of the prior order. Employer's argument, although characterized as *res judicata*, can better be viewed as seeking to apply collateral estoppel, which precludes relitigation of issues actually litigated and determined, if their determination was essential to the prior order. *See State Farm Fire & Cas. v. Reuter*, 299 Or 155, 158, 700 P2d 236 (1985); *Million v. SAIF, supra*, 45 Or App at 1102.

■     Assuming that collateral estoppel would ever prevent a claimant from proving that his current need for medical services relates to a prior compensable injury, it does not have that effect here. Although we agree with employer that it was essential to the prior order that the surgeries were not related to the 1973 injury, the "actual litigation of the issue" requirement is missing, because the hearing on the medical services claim was dismissed. Thus, collateral estoppel does not preclude litigation of any issue here. The Board did not err.

■     One matter remains. Employer also seeks review of the Board's own motion order, *see* ORS 656.278, which reopened the claim as of the date of the 1982 surgery. Claimant proved that the 1973 injury materially contributed to his need for surgery in 1982 and 1984. The Board did not err.

Affirmed.